HIRAM WOOLEY *v.* JOHN EDSON AND LUCIUS W. ADAMS.

*Estoppel. Sale. Attachment. Creditor. Bailment. Action.*

It is an essential element of an estoppel *in pais*, that the act, declaration or omission, which is claimed to constitute the estoppel, *actually induced* the other party to pursue a different course of action from what he otherwise would have pursued, and which, unless the estoppel is sustained, would prove injurious to him.

If the owner of personal property, which is in the hands of a third person, propose to sell it to another at a certain price, to be applied upon the vendor's indebtedness to the purchaser, it being understood that the adjustment of their accounts shall be made at some future time, and this proposition is accepted by the other party, and it is agreed between them that the person in possession shall be notified of the trade, the ownership of the property, as between the vendor and purchaser, passes by the bargain.

But as to the vendor's creditors, the property will still be liable to be attached as belonging to him, until the party in possession is notified by the purchaser of the sale, and, in some cases, has been requested by him to keep the property for him.

*It seems,* that when property is sold while in the possession of a third person, a request by the purchaser to the bailee, to hold it for him, is necessary to perfect the sale as to the creditors of the vendor, only when the party in possession is a naked bailee, with no right of retention of the property. POLAND, CH. J.

One does not stand in a position to assert the peculiar rights of a creditor of a vendor to attach personal property sold without a change of possession, who commences a suit against the vendor and attaches the property in question, but afterwards abandons his attachment and suffers the property to go into the possession of the vendor, who then sells it and pays the attaching party's claim from the proceeds.

The special owner of property in his possession may recover its value from another who wrongfully takes it away from him, and the wrong doer can not ordinarily defeat the action, or reduce the damages by proof that some other person is the general owner, unless he shows some connection with the general owner, so that he can stand upon his right, or that the property has really gone to his use.

TRESPASS for taking a yoke of oxen. The case was referred, and the referee reported the following facts :

" In April, 1859, Azro M. Wright, being the owner of a pair of oxen, sold them to Hiram Wooley for $118 on condition that

they were to remain the property of Wright till.paid for, and Wooley to have till winter to pay for them, and Wooley took possession of the oxen. In a week thereafter, Wright being indebted to Lewis S. Eddy, proposed to sell to him his interest in the oxen for $113, Eddy then knowing the terms on which Wooley held them. Eddy agreed to Wright's proposition. Neither Eddy nor Wright knew at this time precisely how the accounts between them stood, but both believed that the amount due from Wright to Eddy was at least $113, and such I find to be the fact. Wright and Eddy then contemplated an ·early settlement, bringing these oxen into the accounting, but they have never in fact adjusted their accounts ·nor has Eddy ever given Wright any credit in writing anywhere for the oxen.

Eddy and Wright then further agreed that each should notify Wooley, and accordingly about the middle of May, Eddy told Wooley that he had purchased Wright's interest in the oxen, and to pay *him* for them when he paid any one : Wooley replied, "Very well, it makes no difference to me whom I pay, if I can have the time agreed on," to which Eddy answered, "You can have the same time, and longer too, if you wish." Wright never gave Wooley any notice in relation to the subject.

On the 28th of the same May, about ten days after Eddy's notice to Wooley, Wright being in failing circumstances, notified Lucius W. Adams, a creditor of his, and now one of these defendants, of that fact, and told him that he had a pair of oxen at Hiram Wooley's and advised him to attach them. Whereupon Adams procured a justice writ and had John W. Edson, the other·defendant, duly authorized to serve it, and directed him to attach the oxen ; Edson took the writ, and John W. Stearns with him as an assistant, and went to Wooley's, arriving there very early in the morning of Saturday, May 29th, 1859, and calling Wooley up asked him if there was a pair of oxen there belonging to Azro Wright. Wooley replied there was ; Edson then said that he had a writ in favor of Adams against Wright, and wanted to attach the oxen.

All three then went to the barn and Wooley turned the oxen out, and Edson asked Wooley to lend him a yoke, promising to return it safely, and saying that he might have trouble in driving them home unyoked. Wooley got the yoke and yoked the oxen, and about the same time said to Edson, " I don't know as I ought to let the cattle go, for Mr. Eddy notified me to pay him for them when I paid any one." To which either Edson or Stearns replied, " We think we have a better claim to them than Eddy has," and they drove the cattle off.

Subsequently, and before the return day of the writ, Wright, with Adams' consent, sold the oxen and with the proceeds paid Adams' claim, and Edson never made any return on the writ, and no judgment was ever rendered thereon.

Wooley during all this interview asserted to claim to the oxen himself, and did not intimate to Edson, nor his assistant that they were interfering with his rights, nor that he had any objection on his own account, to their taking the oxen.

Both Adams and Edson knew that the oxen were in Wooley's possession under a contract of sale conditioned that they were to remain Wright's property till paid for—but there is no evidence tending to show that they knew that Wooley had, or claimed to have, any time of credit to pay for them—nor that they knew that Eddy claimed any interest in them, except what Edson might infer from Wooley's remark, hereinbefore stated, while the cattle were being yoked.

Wooley saw Adams the next Monday and then claimed some damages for the loss of the use of the oxen, and Adams then understood that Wooley claimed to have had the right to the possession of the oxen till winter.

Several interviews took place between Wooley and Adams, which did not result in any settlement, and shortly before the bringing of this action, Wooley at Eddy's request, gave him a power of attorney to bring this suit in his name, at Eddy's expense, with the agreement that Eddy should pay to Wooley ten dollars from the amount of damages recovered, and retain the remainder for his own use. Immediately on the execution of

the power of attorney, Eddy said to Wooley that he had just as lief pay the ten dollars then as after recovery of judgment, and offered Wooley ten dollars which Wooley received, and thereafter this suit was brought by Eddy's direction in Wooley's name ; and it was conceded on the trial that notice was duly given by Eddy to the defendants, when the writ was served, that the suit was for his benefit.

The value of the oxen at the time of their taking by the defendants, including interest to the day of the hearing before the referee, is $122.37.

The damage to Wooley, for the loss of the use of the oxen, from May 29th, until the next winter, including interest, as above stated, is $11.20.

If the plaintiff is entitled to recover on the facts stated, his damages are assessed at one or the other of the above sums, according to the rule the court may adopt.

Both defendants and John W. Stearns testified as witnesses in the case, and there was no evidence except as hereinbefore stated, tending to show that the action of Edson at the time of the taking of the oxen at Hiram Wooley's was, or was not, influenced by anything that Wooley said or did, or omitted to say or do, on that occasion, nor was the attention of either three witnesses called to the subject.

In making this statement, which is done at the request of the plaintiff, the referee does not mean to find any fact contrary to what may be held to be a legitimate inference from the occurrences at Wooley's at the time of the taking, but only that no witness testified as to what influence any act or omission of Wooley had upon his conduct, and that no question was asked any witness on that subject.

The sale of the oxen by Wright with Adams' consent hereinbefore stated, was after the interview between Wooley and Adams hereinbefore mentioned, as having taken place on the Monday after the taking by Edson of the oxen."

Upon this report the county court, at the April Term, 1861, KELLOGG, J., presiding, rendered judgment for the plaintiff, pro forma, for the largest sum reported by the referee, to which the defendants excepted.

*A. Stoddard* and *H. E. Stoughton*, for the defendants.

*C. B. Eddy* and *Charles N. Davenport*, for the plaintiff.

POLAND, CH. J.   The defendants claim that the plaintiff, by reason of what he said and did at the time the oxen were attached and taken out of his possession by the defendants, and his omission at that time to assert any title or right to the oxen in himself, is now estopped from asserting any title in himself against the defendants.

A satisfactory answer to this claim is found in this, that the case fails entirely to show that the defendants in making the attachment of the property, or in the subsequent disposition of it, were in the slightest degree influenced by what the plaintiff said or did, or omitted to say or do, or that they were in any manner prejudiced thereby.   In all the cases which are to be found upon this subject of *equitable estoppels*, or as more commonly expressed, *estoppels in pais*, this is held to be the essence and reason of the whole doctrine ; that where one by his act or statement or conduct, has induced another to act upon it, he can not afterwards be permitted to assert the contrary to the injury or prejudice of the party who has already acted upon the faith and in the belief created by him.   To allow him to do so, would countenance a direct fraud.   The referee reports that there was no direct proof that the defendants were influenced in their course, by what the plaintiff said or did, or omitted to say or do, unless that is a legitimate inference from the transaction itself.   We think no such inference arises, but the contrary.   Before the interviews between the plaintiff and the defendants, Adams, the creditor, had procured his writ against Wright, for the very purpose of attaching these oxen, and had procured Edson, the other defendant, to be authorized to serve it, and sent him to the plaintiff's house with directions to attach these oxen.   It does not appear that Edson was directed to make any enquiry of the plaintiff, as to the ownership of the oxen, or whether he had any right in them, or that his course was in any manner to be governed by what he might learn from the plaintiff.   His directions were imperative to attach the oxen as the property of Wright.   The inquiry

that Edson made of the plaintiff seems not to have been made with any view to obtain information as to Wright's title, or the plaintiff's title, but rather as a mode of introducing his business to the plaintiff, and perhaps to learn where the oxen were, or to identify them. The plaintiff was only informed that Edson was then clothed with legal authority for the purpose of attaching the oxen as Wright's property. He could not, of course, prevent him from doing so, and had no reason to suppose his purpose would be changed by any statement of his interest in the oxen. There is still less reason for believing that the defendants were deceived by the sayings, acts or silence of the plaintiff, when it is found that the defendants had previously full knowledge that the plaintiff had purchased these oxen conditionally, and then had them in possession under that contract. The inference would be if the oxen still were in his possession, that the time had not expired, and that the contract was still in force. Knowing what the defendants did, they knew enough to put them on enquiry as to whether the contract had expired, and if they omitted to inquire, they only are in fault for remaining in ignorance. When the fact of the plaintiff's interest was communicated to Adams a day or two after the attachment, it created no surprise, and received no attention whatever.

From the details of the transaction given by the referee, we are well satisfied, that the defendants' conduct was not in any manner changed or influenced by the plaintiff's conduct, declarations, or silence, and therefore he came under no estoppel on account of them. We have no occasion to consider any of the other answers the plaintiff has given to this claim of the defendants.

If the plaintiff is not precluded from any recovery by the estoppel, then it is conceded that the plaintiff is entitled to recover damages to the extent of his interest in the oxen, at the time the defendants took them, but the defendants claim he can not recover the whole value of the oxen.

1. Because Wright at the time was the general owner of the oxen, and he received the oxen from the defendants, which would be a satisfaction of his interest.

2. The defendants claim that if Eddy was the general

owner at the time, the defendants are liable to him for his interest in the oxen, and that if the plaintiff recovers the whole value from them, they may be compelled to pay for Eddy's inter-est twice.

If, from the facts reported, Wright is to be regarded as the general owner of the oxen when the defendants took them, then it is clear that the plaintiff can only recover of the defen-dants for his interest in the oxen, as the oxen went subsequently to the use and for the benefit of Wright, and by his own consent.

But in our judgment, this is not a tenable proposition. Wright proposed to sell his interest in these oxen to Eddy for $113, and have it apply upon Eddy's account against him, which was of a greater account, and have their price adjusted in a subsequent settlement of their accounts. Eddy accepted the proposition thus made him, and the bargain was thus fully con-summated and complete. No actual delivery could be made by Wright to Eddy, because the possession, and right of possession for the time being, were in the plaintiff. All that could be done was to give him notice of this change of the ownership. It was agreed between Wright and Eddy, that each should notify the plaintiff, and Eddy did so, but Wright did not. We do not regard this notice, as the defendant's counsel have argued, as a condition to be complied with, before the title passed under their agreement, or that it was so understood or intended by the par-ties to it, but for the purpose of having the plaintiff made fully acquainted with it for his and their protection. Until such notice to the plaintiff, he would be justified in dealing with Wright as the general owner, and so might the creditors of Wright. We can see no good reason why, as between Wright and Eddy, the property did not pass to Eddy by the bargain. The price was agreed upon, and was paid by the agreement of the parties that it should apply on Wright's indebtedness; it was agreed the plaintiff should be notified, which was all the deliv-ery that could be made, and nothing more remained to be done on either side, to render the bargain complete and effectual between the parties.

But the defendants claim that if the property passed as

between the parties, the sale was still inoperative and void as to Wright's creditors, because what was done did not amount to a sufficient change of possession ; that though Eddy notified the plaintiff that he had purchased and become the owner of, the oxen, the plaintiff did not agree to hold them for, or under, the plaintiff, which is claimed to be necessary in order to prevent - creditors of Wright from taking the property.

The cases in this state, on the subject of what is necessary on the sale of personal property, at the time in the possession of a third person, in order to make such a change of possession as will prevent the seller's creditors from attaching it, seems rather confused, and contradictory. In some of them it is decided, that notice to the person in possession by the purchaser is sufficient, while others, and perhaps the later ones, seem to require that the person having possession, should also assent to become the bailee of, and keep the property for, the purchaser.

When the person in possession has no right or interest in the property himself, and is the mere keeper or custodian of the property for the owner, there would seem to be some propriety in requiring that he should assent to become the keeper, or bailee, of the purchaser. He can not be compelled to enter into that relation with the purchaser unless he chooses to, and if he refuses to do so, and the property is by the purchaser allowed to remain in his hands, he may properly be still considered as keeping it for the original owner of whom he received it, and that it is still legally in his possession.

But when the person having the possession has a right of possession in himself, and is not a mere naked bailee, the purchaser has no choice ; all he can do is to give him notice, and if the person in possession declines to enter into any stipulation with him as to keeping the property for him, and stands upon his own rights under his contract, the purchaser can not take away the property, but must leave it in his possession. In such case it would seem that mere notice should be enough.

But it is not necessary to decide this, for the defendants are not in a position to assert any peculiar rights of a creditor for

want of a change of possession. The defendants attached the property on a writ against Wright, but the attachment was immediately abandoned, and Wright was allowed to take the property and dispose of it. The defendants, therefore, not having pursued their process, but abandoned it, do not stand in the place of creditors, but in the place of Wright, and can no more object to the validity of the sale for want of a change of possession, than Wright himself could.

But the defendants say that if Eddy was the general owner of the oxen, with whom they have no connection or privity, and who has no portion of the avails of the oxen, still they claim that the plaintiff can only recover to the extent of his interest, and not the full value, because they say his recovery of the whole value would not preclude Eddy from subsequently suing them and recovering for his interest in the oxen. Mere possession of property is said in all the books to be a sufficient title to enable the possessor to recover its value from another, who wrongfully takes it away from him, and the wrong doer can not ordinarily defeat the action, or reduce the damages, by proof, that some other person is the true owner, unless he shows some connection with the owner, so that he can stand upon his right, or that the property has really gone to his use. All the cases seem to agree in this result, but different reasons are given for it. In some of the cases, especially in Massachusetts, the person in possession, or having a special property merely, is allowed to recover the whole value, and it is put upon the ground of his liability over to the true owner, or general owner. In other cases, this reason is wholly discarded, and it is said that the assent of the general owner will be presumed, to have the action brought and the whole damages recovered by the possessor, or special owner, unless the defendant connects himself with him in some way, or such owner himself interferes to assert his own right, and that if the general owner does not interfere, but allows the suit by the possessor or special owner to proceed to judgment, and the full damages to be recovered, he can not afterwards sue. These latter views are fully adopted by a late case in this state, *White* et al. v. *Bascom et al.*, 28 Vt. 268, and we must regard it as conclusive of the law on this point.

Wright having parted with all interest in the oxen to Eddy, the defendants stand, as tortious tokens of the property, and, being in no way connected with Eddy, can not set up his right, even to reduce the damages. As the case shows this action brought for the benefit of Eddy, there would seem but small reason to turn the parties over to another suit, even if the general rule were otherwise settled.

.Judgment affirmed.