# TOWN OF ROXBURY *v.* THE CENTRAL VERMONT R. R. Co.

## *Railroad. Highway Crossing. R. L. s. 3383.*

1. JURISDICTION. An action at law based upon section 3383, R. L., can be maintained against the receiver of a railroad company for negligence in constructing a crossing, although leave was not obtained of the Court of Chancery to bring it.

2. CROSSING, LIABILITY OF RAILROAD TO TOWN. The railroad company of which the defendant was receiver being empowered under its charter to build its railroad across highways, provided it restored them as near as practicable to their former state and usefulness, to the acceptance of the selectmen, or in case of their refusal, to the acceptance of the commissioners, constructed its railroad across a highway in the plaintiff town, but neglected to restore it to its former usefulness, and left it defective through failure to put railings along the approaches constituting a part of the crossing. After the charter had been granted and the railroad built, a statute was passed, making railroad companies liable to towns for damages resulting from insufficient crossings. In an action to recover the amount of a judgment and the expenses attending it, which had been rendered against the plaintiff in favor of a traveller for injuries occasioned through want of said railings; *Held,* that the company failed in its primary duty; that its liability became established by the facts that it failed to restore the highway as the charter provided, and that the crossing had never been accepted; and if the approaches extended beyond the surveyed limits of the railroad and railings were required, it was the duty of the company to build them.

3. CHARTER. STATUTE. Although the charter was exempt from amendment and repeal, it was unnecessary to decide whether there was error in the charge to the jury, that the statute on which the action was based, was controlling; for the right of action upon the facts existed in any event; and a wrong reason for a correct decision is not reversible error.

4. DUTY OF RAILROAD IN BUILDING A CROSSING. The general rule is that where a railroad company is authorized to cross highways, it is under a duty to construct its road across them in a reasonable manner with reference to the double use of crossing for its own purpose, and for travellers, and that the right is subject to the maxim, *Sic utere tuo ut alienum non lædas.*

Roxbury v. Railroad Company.

5. STATUTE OF LIMITATIONS. The defendant cannot protect itself, against the liability on the ground that the Statute of Limitations would bar an action for the original obstruction; for the obligation and the negligence were continuing.

6. CROSSING. The word " crossing," as used in the statute and applied to the intersection of a highway and a railroad, means the entire structure, including the approaches, although a part may be outside the limits of the railroad lands.

7. ESTOPPEL. The doctrine of estoppel does not apply; as it does not appear that the railroad company was misled in reliance upon the action of the town, or knew what the town did in making repairs on the approaches.

8. PRACTICE. The Supreme Court cannot find or infer a waiver of acceptance of the crossing, from the slight repairs made by the town on the travelled track of the fill, when the jury found that neither the selectmen nor commissioners accepted it.

ACTION based upon section 3383 of the Revised Laws. Heard on demurrer to the writ and declaration, March Term, 1885, Washington County, REDFIELD, J., presiding. Demurrer overruled. Exceptions allowed and ordered to be certified into the Supreme Court. The County Court having adjudged the writ and declaration sufficient, the defendant pleaded the general issue with notice of a special matter to give in evidence; and there was a trial by Jury, March Term, 1885, POWERS, J., presiding. Special and general verdict for the plaintiff.

The writ was directed against " The Central Vermont Railroad Company, a corporation organized and doing business under the laws of the State of Vermont." The declaration commenced as follows : " In a plea of the case founded on section 3383 of the Revised Laws of the State of Vermont, whereupon the plaintiff declares," etc. ; and among other things, it was alleged, that the Central Vermont R. R. Co. was incorporated in 1872, and after its organization " it was appointed receiver, or receiver and manager of the Vermont Central Railroad Company and as such took possession of said road-bed and track and other property of the Vermont Central Railroad Company, and has used, operated and had the exclusive control and management of the same for : to wit, seven years last past."

The following statement was agreed on :

"That the Vermont Central railroad company prior to the year 1850 built its road-bed through the town of Roxbury, and commenced running regular trains upon and over it, and the same has been in constant use for a railroad from that time up to the present time. That in the construction of said road-bed, it crosses a public highway in the town of Roxbury, between the dwelling-house of Azro Simons and the dwelling-house of Marshall Latham, which highway was laid out, established and used for a highway long before said railroad was built and ever since has been used for a highway, and that during all this time, the town of Roxbury, by law, has been bound to keep said highway in good and sufficient repair. That the railroad track and the highway both run in a northerly and southerly direction, but near the point of crossing, going in a northerly direction from Roxbury village, towards Northfield, the highway is on the westerly side, and the highway turns easterly and crosses the track at nearly right angles, and there makes a curve northerly on the easterly side of the track, then on northerly, not parallel with the railroad track, but gradually diverging easterly from the railroad track, but in plain sight; and the travelled highway at the point one hundred and fifty feet northerly of said crossing is not more than one hundred feet from the railroad track.

"In the construction of the road-bed, upon which the rails are laid, the grade at this crossing is six feet higher than the road-bed of the highway was before the railroad was built, and when the railroad was built this fill of about six feet was made.

"From said crossing upon said highway, some rods each way, the road has been filled so as to make the slope of the road-bed of the said highway gradual from the point where it crosses said track down as far as the fill extends; that the embankment upon said highway each side of said crossing, is about six feet high at the crossing and gradually grows less each way, as the road is more distant from the crossing, and reaches the road-bed, as it was before said railroad was built, in about ten rods from said crossing.

"That said highway, as it was before said railroad was built, was nearly on a level with the lane on the easterly side of said highway for ten rods each side of said crossing; that no railing or other muniment was ever built or maintained by any one on the easterly side of said highway for the protection of travellers, for ten rods each side of said crossing.

" That on the 29th day of September, 1880, one Orlando G. Fassett, of Warren, Vt., was passing over the highway aforesaid, with his horse and wagon, and as he claimed, as he approached said crossing did not hear or see an approaching train upon said railroad, coming from the north, until he was within about twelve feet of said crossing, and said train was near said crossing.

" He could not turn around with his team without running off the embankment to the east of said highway, but on the west side of the railroad track ; that he concluded it was the safest course to attempt to drive across the track ahead of the train, which he did ; that his horse was much frightened by the train so that he did not obey the rein, and after crossing the track kept on in a course to the northeast, which course brought his horse and wagon in which he was riding, nearer the edge of the embankment on the east side of the crossing on the east side of the highway ; that his horse was running and he could not control him, and his wagon began to tip over said embankment at a point about ninety feet from the railroad track and he was thrown out, and his wagon fell upon him on the level land on the east side of the highway at a point one hundred and twenty feet from the railroad track. At the point where said Fassett's horse and wagon went off the embankment, the embankment was three feet high.

" The only particular in which the said Fassett claimed the highway was insufficient was the want of a railing on the east side of the highway along the embankment made in constructing said crossing.

" Said Fassett duly notified the town of Roxbury thereof, on the 14th day of November, 1880, and that he claimed damages for his injuries, of Roxbury, and brought his suit against said town to recover for said injuries, returnable at the March Term of Washington County court, 1881. After said suit was brought and before the close of the term of court to which it was returnable, the town of Roxbury duly notified the Central Vermont railroad company to appear and defend said suit, but said corporation did not appear or defend said suit, but said town of Roxbury did appear and defend said suit, and such proceedings were had in said cause that said Fassett recovered judgment against the town of Roxbury for his injuries, which said town paid before the bringing of this suit.

" That at the point of this crossing the width of the railroad

survey, as recorded in the town clerk's office in the town of Roxbury, is forty-four and one-half feet on the westerly side, and fifty-four and one-half feet on the easterly side of the center of said track.

"That at the time of the injury to said Fassett, the Central Vermont railroad company as receivers and managers were in the management of the Vermont Central railroad, and had the exclusive management and control of the same, and had had such exclusive management and control of the same five years prior to said injury; that the statute upon which this action was founded was passed since the railroad aforesaid was constructed; that the injury to said Fassett actually occurred outside of the surveyed limits of the railroad.

"It is conceded, the statute on which this suit was brought, was passed subsequently to the organization of the Vermont Central railroad company and the construction of said railroad, and that the place where said Fassett actually was injured, was outside of the surveyed limits of the railroad.

"It is mutually agreed by the plaintiff and defendant that the foregoing facts will be conceded on trial.

"It is hereby stipulated that on the trial before the jury, the following facts will be conceded:

1. That the Vermont Central railroad company organized under its charter, passed by the legislature of the State of Vermont in 1843, and built that portion of its road which runs through the town of Roxbury, as early as 1849, so that the regular trains run over its road. The charter of said company as published in the session laws of 1843, may be used in evidence.

2. That the legislature of the State of Vermont at its session in 1872, chartered the Central Vermont railroad company, which company organized under its charter, and as early as 1875, said corporation was appointed receiver and manager of the Vermont Central railroad company, and as such took possession of the road-bed and and all other property of the Vermont Central railroad company, and commenced running trains upon said railroad, and from that time until after the accident in question, had the exclusive management, possession and control of said railroad, and were running the trains upon said railroad at the time of the accident in question. The charter of the Central Vermont railroad company, as published in the session laws of 1872, may be admitted in evidence."

It appeared that the defendant company was organized under its charter in 1843 and built that portion of its railroad through the town of Roxbury, so the cars ran through from White River Junction to Roxbury in 1848 and thence to Northfield in the same year; that said railroad was built through the valley between Roxbury village and Northfield village, and at a point about one and one-half miles north of Roxbury village, it intersected a highway between said villages. Said highway was then the county road so called, and was at the time said railroad was built and ever since has been an open public highway and the principal thoroughfare for teams between said villages, and was laid out by a court's committee in 1831; that said highway from Roxbury village to said place of intersection, and thence north to Northfield line, one and one-half miles, was in the town of Roxbury and after said highway was built, and ever since, it has been used as a public highway and during all this time, the town of Roxbury has been bound to keep it in good and sufficient repair.

That in the construction of the road-bed of said railroad, the railroad company made a fill upon which the rails were laid, at said place of intersection, so that the grade was about six feet higher than the road-bed of the highway.

The plaintiff's evidence, which was not contradicted by the defendant, tended to show that from said point of intersection easterly for about twenty-five rods, said county road, prior to to the building of said railroad, passed upon swampy land through a meadow, and that the highway at this place had been built by placing bushes upon the ground and putting earth upon them, and that in the springtime it was very muddy, and frequently inundated; and that after the road-bed of said railroad was built, the railroad company made a fill on each side of its road over the old highway, so that the slope from the railroad on each side was gradual, and that said fill on the easterly side of said railroad was about six feet high at said crossing and extended back about ten rods, and that said high-

Roxbury v. Railroad Company.

way and the approaches to the crossing on both sides were built by said railroad company in 1849.

The defendant's evidence tended to show that the crossing and the approaches to it on said easterly side were well made and in such a manner as to restore the highway to its former state and usefulness, as near as practicable; that after said highway was completed on each side of said crossing by said railroad company, the town assumed the care and control of said crossing and the approaches to it, outside the limits of said railroad and thereafter always took care of the same.

The counsel for the defendant requested the court to charge the jury as follows :

1.  That the statute of 1855 did not attempt to impose any duty upon the railroad company, nor do the Revised Statutes, except to take care of this crossing upon the railroad, or under, or over it.   That in this particular case it did not attempt to create any duty upon the railroad company, beyond its surveyed limits.

2.  That the legislature could not impose the duty on this railroad company, whose charter was exempt from amendment and repeal, to repair or maintain the crossing beyond its surveyed limits.

3.  That the injury to the plaintiff (Fassett) occurred about ninety feet easterly and southerly of the track, where his wagon went off the highway, under the agreed statement of facts, and the distance from the track to the surveyed limits of the railroad on the east side was fifty-four and one-half feet, so that, therefore, the injury to Fassett occurred about thirty-five and one-half feet easterly from, and outside the surveyed limits of the railroad.   That, therefore, the plaintiff cannot recover, because the injury happened at a point on the highway outside of the crossing, and at a point where the road was restored to its former state and usefulness in 1849, by the Vermont Central company.

The court refused to charge as requested, and to such refusals to charge the defendant excepted.

The court charged the jury that the statute upon which the action in this suit was founded, was applicable to this suit, and that it was competent for the legislature, notwithstanding the defendant's charter, to pass such a statute, and thus impose upon this railroad company the additional duty of keeping crossings in repair and rebuilding them when necessary, and that said statute was valid and obligatory on the defendant, and that the duty is cast upon the defendant by virtue of this statute, to take the care and control of said crossing; that said statute was not designed to invade any of the chartered rights of the defendant, but that it was in the nature of a police regulation and designed to protect the travelling public; that the burden of proof was cast upon the plaintiff to satisfy the jury, by a fair balance of evidence, that the place where Fassett received his injury was a part of the railroad crossing; that the claim of the defendant, that the statute is limited to such part of the highway as is within the limits of the railroad company, *viz.* : six rods, is too narrow a view of the statute; that a crossing over a railroad track may include so much of the railroad as is within such limits, or it may extend a considerable distance beyond those limits; that if the structure that is made for the purpose of enabling the travelling public to get over the railroad, requires approaches each way, longer or shorter, those approaches are, properly speaking, a part of the crossing itself, just as much as the part that is between the rails; that the words of the statute would convey the idea that the crossing is to embrace everything that is required to enable the travelling public, safely and conveniently to get over the railroad; that in determining what the crossing is, properly speaking, the jury were to have in view the use by the railroad and the threatened danger to the public travel; that the state of repair was to be measured to a certain extent, by the threatened danger; that if the threatened danger required a

Roxbury v. Railroad Company.

wider track and a smoother approach, it is expected of the railroad company ; that everything that is built for the accommodation, safety and convenience of the travelling public, where a railroad crosses a highway in obedience to this statute, whether it be an embankment or an approach, is, properly speaking, a part of the crossing ; that in this case, if the fill or embankment extended out as far as the place where Fassett received his injury, and it was properly required to meet the safety, convenience and accommodation of the travelling public, the fill or embankment was a part of the crossing, notwithstanding, it was a considerable distance from the surveyed limits of the railroad, itself.

To the charge of the court as above stated, the defendant excepted.

The court submitted to the jury the following special verdict which was answered as follows :

1.   Did the Vermont Central Railroad employees make any repairs upon the approaches to the crossing in question, outside the surveyed limits of the railroad, and near the place of Fassett's accident, after 1849 ?   No.

2.   Did the town of Roxbury make all the repairs that were made upon such approaches, after 1849 ?   Yes.

3.   Did the commissioners accept the crossing in question? No.

If question No. 3 is answered in the negative, then answer the following, No. 4.

4.   Did the selectmen accept the crossing in question?   No.

The jury also returned a general verdict for the plaintiff.

After verdict, the defendant moved that judgment be rendered for the defendant by reason of the special verdict found by the jury that the plaintiff made all the repairs that were made upon the approaches to the crossing in question, outside the surveyed limits of the railroad, and near the place of Fassett's accident, after 1849.

The court overruled the motion, to which the defendant excepted.

The exceptions were allowed, execution stayed, and the cause passed to the Supreme Court.

*Noble & Smith* and *B. F. Fifield*, for the defendant.

The case shows an attempt by the town to hold the defendant liable as a *corporation* in its *personal* capacity for damages that occurred on a highway on the line of a railroad which it was operating exclusively as *receiver*.

. When the affairs of a railroad are such as to require a receivership, the property goes into the hands of the court in the first instance, the court then delegates an officer to be a receiver to operate the property in its stead. The officer, as an individual, has no *ownership* in the property, and hence, as an individual, occupies a very different position from the corporation which owned and possessed the property *before* the receivership existed.

The execution will run against the private property of the defendant. It cannot run against the receivership property, for the judgment record would show the corporation alone liable for the demand. To hold this would be against all general principles, and in conflict with the law applicable to receivers. Pierce on R. R. 285, and authorities cited.

It is a general rule that before suit is brought against a receiver leave of the court by which he was appointed must be obtained. *Davis* v. *Gray*, 16 Wall. 203, and cases there cited; *Hall* v. *Smith* 2 Bing. 156; *Camp* v. *Barney*, 4 Hun (N. Y.), 373; *Commonwealth* v. *Runk*, 26 Pa. St. 235; *Thompson* v. *Scott*, 4 Dill. 508.

Nor does the case at bar come within the rule laid down in *Blumenthal* v. *Brainerd*, 38 Vt. 402, and other similar cases in this State. These were all actions *ex-contractu*, and are different from the case at bar, and are governed by a different principle. Nor can it be said that section 3300 imposes any personal liability on a receiver. The declaration shows the

property was in the exclusive possession of a receiver; and it is not pretended that leave to bring the suit was obtained or even sought. The doctrine on this point is clearly and fully stated in *Barton* v. *Barbour*, 104 U. S. 126-128, by Mr. Justice Woods.

The court below charged that section 3383 R. L., was a police regulation. This was error. Ch. J. Redfield in *Nelson* v. *Vt. & Can. R. R.* 26 Vt. 718-721, says: " It is certain, we think, that the legislature cannot impose new burdens upon corporations under such circumstances, which are merely and exclusively of private interest and concern, and which have nothing to do with the general security, quiet and good order."

The duty of the towns to take care of their highways is not lessened by section 3383; nor their liability to answer damages for accidents happening thereon. It matters not to the public travelling over the highway by whom the highway is repaired. This section of the statute is, therefore, a matter of private concern only, between the towns and the railroad, and in this view loses entirely the vital characteristic of a police regulation, which is required, in order to be valid, to concern " the general security, quiet and good order." See *Thorpe* v. *R. R.* 27 Vt. 140.

The section therefore is void as to the Vermont Central railroad, since it materially interferes with its vested rights— its charter being granted without reserving the right to annul, alter or repeal the same.

The verdict shows that the railroad company never made any repairs on the crossing in question, and that the plaintiff town made all of them; and the exceptions show that the defendant's evidence tended to prove that the town assumed the care and control of the crossing and its approaches, after it was restored by the railroad.

It was error to overrule the defendant's motion for judgment, by reason of the special verdict.

There is a provision in the charter that the railroad shall restore the highway to its former state and usefulness, as near as practicable, but none that the company should take care of it, when restored.   Hence, it was the duty of the town to take care of the highway, the same as before the crossing was made.

No question can be made but that the crossing was restored to its former state and usefulness as near as practicable.    The defendant's testimony, which was uncontradicted, showed this. It could be accepted in one of three ways : By agreement with the selectmen ; by acceptance of the commissioners ; and by user and adoption by the town.    The road was laid out in 1831, and had always been used since that time.

This then was clearly an acceptance of the crossing, and adoption of it as a part of the town's highway.

The statute is not a police regulation, and if it was, the place where the injury happened was outside the surveyed limits of the railroad ; and if the legislature could impose the duty on the railroad company to take care of the highway for three rods outside of the surveyed limits of the railroad, then they could for half a mile.

The statute of 1855 at all events does not attempt to create the duty upon the railroad company to take care of anything but the crossing.    What is a crossing?    It does not embrace anything outside the surveyed limits of the railroad.

The place where the accident happened, therefore, was no part of the crossing.

The town assumed to take care of this crossing from 1848 down to 1855, when the statute was passed, as it was clearly its duty to do.    After 1855 it did precisely the same thing. The railroad company repudiated the statute as being an infringement of its charter rights, and never made any repairs upon it (the crossing and approaches,) and the town assenting to it proceeded to take care of the crossing, and made all the repairs upon it down to the present time.

Whether, therefore, the statute of 1855 was constitutional or not, as imposing a new duty upon the company, or whether the word "crossing" in the statute of 1855 will embrace any part of the highway outside of the surveyed limits of the railroad, is immaterial. They assented to the claim of the railroad that it did not belong to the *railroad* to repair, and the town having kept it in repair themselves for more than thirty years, are estopped from saying that it belonged to the railroad to keep in repair.

Where the facts are "undisputed, their sufficiency to warrant the conclusion that the road was adopted as a public highway would be a question of law." *Folsom* v. *Underhill*, 36 Vt. 587 ; *Pratt* v. *Swanton*, 15 Vt. 147.

"Acts of the selectmen appropriating money or labor to the repair of an existing road within their town, manifest an intention to adopt and treat the road as an existing public highway." *Folsom* v. *Underhill, supra;* Rob. Dig. 358.

*Z. S. Stanton, S. C. Shurtleff*, and *Senter & Kemp*, for the plaintiff.

Consent cannot confer jurisdiction when it is not given by law. *Gliden* v. *Elkins*, 2 Tyler, 218 ; *Thayer* v. *Montgomery*, 26 Vt. 491.

Courts of Chancery will protect its officers by an injunction from suits at law in all proper cases ; but the fact that the defendant is such an officer or agent, is no defence at law. *Sprague* v. *Smith*, 29 Vt. 421 ; *Blumenthral* v. *Brainerd*, 38 Vt. 402 ; *Morse* v. *Brainerd*, 41 Vt. 550 ; *Cutts* v. *Brainerd*, 42 Vt. 566 ; *Newell et al.* v. *Smith et al.* 49 Vt. 255.

The first statute on this subject was passed in 1855 and was as follows : " Section 2. Any person or persons, having the possession of, control or management of any such railroad, or of the engines and cars running thereon, either as lessees, assignees or trustees, or in any other capacity shall perform

the same duties and be subject to the same liabilities, to be enforced in the same manner as is provided in the first section of this act in the case of a railroad corporation."

This section, only changed to adapt it to all cases, went into the General Statutes (Chap. 28, Sec. 41), and is now embraced in section 3300 of the Revised Laws. Both of these sections were in force at the time the cause of action accrued.

Sections 40 and 41, chap. 28 of the Gen. Sts., whereby railroads were made liable to towns for injuries resulting from defective crossings were consolidated into section 3383, R. L. They were not new statutes. R. L. s. 4590. The approaches to the crossing were to be kept in repair by the railroad. R. L. s. 3383 ; Gen. Sts. chap. 28, ss. 38, 40 ; Laws of 1855, No. 28, s. 1 ; Laws of 1852, No. 26, s. 1 ; defendant's charter, s. 10. The word " crossing " is not limited to what is included between the rails, but includes the entire embankments, whether within or without the surveyed limits of the railroad. North Staffordshire Railroad Co. v. Dale, 8 Ell. & Bl. (92 E. C. L.), 835 ; Freeholders of Sussex Co. v. Strader, 18 N. J. L. 108 ; Penn Township v. Perry Co. 78 Pa. St. 457 ; Daniels v. Intendant and Wardens of Athens, 55 Ga. 609 ; People v. N. Y. Central & Hudson R. R. R. Co. 74 N. Y. 302 ; Hayes v. N. Y. Central & Hudson R. R. R. Co. 9 Hun, 63 ; Parker v. Boston & Maine Railroad, 3 Cush. 107 ; Commonwealth v. Inhabitants of Deerfield, 6 Allen, 449 ; Titcomb v. Fitchburg Railroad Co. 12 Allen, 254 ; White et al. v. the Inhabitants of Quincy, 97 Mass. 430.

The legislature imposed no new liability by these statutes ; for whatever the defendant was bound to build, it was bound to repair. The statutes merely gave a remedy to enforce the rights of the town, that by the terms of the charter already existed, under the act of incorporation the Vt. Cen. R. R. Co. had a right to cross highways on condition that it restored them, so near as practicable, to their former state and useful-

ness. When in crossing a highway, it becomes necessary to build a bridge over the railroad, the company is under obligation to keep it in repair. *People* v. *Troy & Boston R. R. Co.* 37 How. Pr. 427 ; *Rowe* v. *Elmendorf*, 52 How. Pr. 232 ; *Cott* v. *Lewiston R. R. Co.* 36 N. Y. 214 ; *People* v. *N. Y. Central and Hudson R. R. R.* 74 N. Y. 302 ; *Penn. R. R. Co.* v. *Borough of Irwin*, 85 Pa. St. 336 ; *Burritt* v. *New Haven*, 42 Conn. 174.

Charters like this one are construed liberally for the benefit of the public, and strictly as against the corporation. *Burritt* v. *New Haven*, 42 Conn. 174. See *Hamden* v. *New Haven Co. et al.* 27 Conn. 158.

The right to regulate railroad crossings flows from the police power, which the legislature does not and cannot divest itself of by granting a charter. *Pittsburg & Connellsville R. R. Co.* v. *the Southwest Penn. Railroad Co.* 77 Penn. St. 173. The general rights and powers of a corporation are subject to the same legislative control. *Bank* v. *County of Hamilton*, 21 Ill. 53 ; *Chicago Life Ins. Co.* v. *Needles*, 20 Rep. 129.

Such legislation violates no contract, and interferes with no vested rights. *People* v. *Boston & Albany R. R. Co.* 70 N. Y. 569 ; *Galena & Chicago Union R. R. Co.* v. *Appleby*, 28 Ill. 283 ; *Branch* v. *Wilmington & Weldon R. R. Co.* 77 N. C. 347 ; *Ruggles* v. *Illinois*, 108 U. S. 526 ; *Kansas Pacific Railway Co.* v. *Mower*, 16 Kan. 573 ; *Blair* v. *Ill. & Prairie Du Chien R. R. Co.* 20 Wis. 254 ; *Ind. Pittsburg & Cleveland R. R. Co.* v. *Marshall*, 27 Ind. 300 ; *Ind. & Cin. R. R. Co.* v. *Kercheval*, 16 Ind. 84 ; *Ohio & Miss. R. R. Co.* v. *McClelland*, 25 Ill. 140 ; *New Albany & Salem R. R. Co.* v. *Tilton*, 12 Ind. 3 ; *Galena & Chicago Union Railway Co.* v. *Loomis*, 13 Ill. 548 ; *Gorman et al.* v. *Pacific R. R.*, 26 Mo. 441 ; *Nelson* v. *Vermont & Canada R. R. Co.* 26 Vt. 717 ; *Thorp* v. *Rutland & Burlington R. R. Co.* 27 Vt. 140.

The opinion of the court was delivered by

VEAZEY, J.   This suit was brought to recover of the defendant railroad company the amount of a judgment which had been rendered against the plaintiff town for injury to a traveller upon a highway by reason of its insufficiency which consisted of an embankment or fill constituting an approach in the highway to a railroad crossing, and having no railing at the sides of the fill to protect the traveller from going off.

The defendant company was cited in to defend the former suit but did not appear.   The defendant filed a general demurrer to the writ and declaration which was overruled and the declaration adjudged sufficient, to which the defendant excepted.

The only objection urged under the demurrer is that the defendant company was in possession of this railroad and operating the same as receiver and manager under the order and appointment of the Court of Chancery, and the declaration does not allege that leave was obtained of that court to bring this suit, therefore the County Court had no jurisdiction.   The case of *Lyman* against this same defendant lately decided, 59 Vt. 167, is full authority and controlling against the defendant on this point.

The County Court having adjudged the declaration sufficient, the cause went to trial by jury and further exceptions were taken.

This suit was based upon section 3383 of the Revised Laws, which was first enacted in 1852 and 1855, and after the act of incorporation of the Vermont Central railroad company and after its railroad was built across the highway in question. Contrary to the defendant's requests the court charged the jury that notwithstanding the charter of the railroad company was prior and was exempt from amendment and repeal the enactment now incorporated in section 3383 R. L. was competent, applicable, and controlling upon the railroad company and did

not infringe any of the chartered rights of the company, and that it applied to what constituted the railroad crossing as a whole although not wholly within the limits of the railroad land. To this ruling the defendant excepted.

The railroad land at this point was six rods wide. The track was six feet above the grade of the highway before the railroad was built, and in constructing the approaches on the highway to the crossing the embankment or fill extended beyond the limit of the railroad land and the injury to the traveller occurred on this fill about thirty-five feet outside the surveyed limits.

The charter of this railroad company was granted in 1843, before any railroads had been built in the State; but highways existed everywhere, and the statutes of the State then and ever since required them to be good and sufficient, and until recently made the towns respectively liable for special damages occurring to travellers by reason of their insufficiency.

The general rule is, that where a railroad company is authorized to cross highways, it is under a legal duty to construct its road across them in a reasonable manner, with reference to the double use of the crossing for its own purposes, and for travellers upon the highways; that is, the right is subject to the principle of law which is so universal as to have become a maxim, *Sic utere tuo ut alienum non lœdas.* Pierce on Railroads, p. 243, and cases there cited.

Section 10 of this charter conferred the right upon the company to build the railroad across highways provided it *restored* the highway thus intersected as near as practicable to its former state and usefulness, to the acceptance of the selectmen of the town, or, in case of their refusal, to the acceptance of the commissioners provided in the charter. Presumably this highway, before it was interfered with by the building of the crossing, was such as the statute required, *viz.* : good and sufficient.

Therefore in order to restore the highway at this crossing to its former state and usefulness as near as practicable, it was necessary to make it good and sufficient. Prior to the crossing

the land was level; hence no railings were required. The highway was left by the company defective, not " good and sufficient," not in its former state and usefulness as near as practicable, by not putting railings along the sides of the embankment. Therefore, the company failed in its primary duty under the charter.

Neither the selectmen nor the commissioners ever accepted the crossing.

It is plain that the company's duty did not end at the line of its land, if the highway could not be made good and sufficient without extending the fill of the crossing further. A crossing that could not be used in ordinary travel on the highway without the embankment or fill constituting the approaches being extended beyond the railroad land, would not be, without such extension, such a crossing as the law required. With such a defective crossing the highway would not be *restored* to its former state and usefulness. It would not be good and sufficient.

There is no reason why a town should be put to expense to build the approaches to a crossing. It receives no compensation for the right to cross.

We further think that the word *crossing*, as applied to the intersection of a common highway and a railroad and as used in the statutes, means the entire structure, including the approaches, although a part of the structure may be outside the lines of the railroads lands or the place where the roads actually cross each other. Such is the holding as to bridges whether over streams or roads. *White* v. *Quincy*, 97 Mass. 430; Pierce on Railroads, 250, and cases there cited; and see cases cited in plaintiff's brief. Such was also the ruling as to a crossing like this in *Farley* v. *C. R. I. & P. R. Co.* 42 Iowa, 234.

We therefore hold that it was the company's duty under the charter to so construct the highway at the crossing that the same should be, as nearly as practicable, as available for the safe use

of the travelling public, as the highway was before, and if the elevation was such that the approaches on the highway must extend beyond the surveyed limits of the railroad in order that the crossing might be thus available, then the charter contemplated the building of the approaches to meet the necessity; and if a railing along the sides of the embankment constituting the approaches was required to thus *restore* said highway, the building of such railing was the duty of the company.

The company not having performed the condition of the charter in respect to restoring this highway to its former state and usefulness cannot claim immunity under it.

The obligation to restore was constant until performed. The negligence in the primary duty was continuing. The liability is like that in the ordinary case where a person puts an obstruction in the highway creating a defect and causing special damage to a traveller. Such person must reimburse the town for a judgment recovered against it for injury resulting from such defect.

The railroad company cannot protect itself against such liability on the ground that the Statute of Limitations would bar an action for the original obstruction. *Hamden* v. *New Haven N. Co.* 27 Conn. 158; *Burritt* v. *New Haven,* 42 Conn. 174.

These views render it unnecessary to pass on the construction of the statutes of 1852 and 1855, as embodied in section 3383 R. L.

The liability of the railroad company became established by the facts that the company failed to restore the highway as the charter provided, and that the crossing was never accepted by the selectmen or commissioners, if nothing else appeared to meet this condition.

Therefore, the provision of section 3383 that " the corporation shall keep in good and sufficient repair," etc., imposed no additional burden on the defendant, as to this crossing, to that

which existed under the charter. So that it is immaterial whether this section will bear the construction which the County Court gave it or not. The right of action existed under it upon the facts in this case in any event. That being so an unsound reason for so holding did not constitute reversible error. We do not decide whether or not the County Court correctly construed the statute.

The jury returned a general verdict for the plaintiff, but found specially that the plaintiff made all the repairs that were made upon the approaches to the crossing, after 1849, when the railroad was built, but found that neither the railroad commissioners nor the selectmen accepted the crossing. After verdict the defendant moved that judgment be rendered for the defendant by reason of said first finding in the special verdict.

This motion was based upon the proposition that there was an acceptance by the town by use and adoption. The doctrine of estoppel does not apply, as it does not appear that the railroad company was misled in reliance upon the action of the town. It does not even appear that the company knew what the town did or that it did anything on that embankment.

The acts of a party cannot operate as an estoppel in favor of a person having no knowledge of them, and consequently in no way misled by them. *Bucklin* v. *Beals*, 38 Vt. 653. Estoppel *in pais* cannot be set up, unless it appears that the action of the party setting it up was influenced by the act, declaration or omission claimed to constitute the estoppel. *Warley* v. *Edson*, 35 Vt. 214.

The question is not as argued whether this was a highway by adoption. It was a regularly laid out highway long before the railroad crossed it. The question is whether the town was affected by its action in keeping the approaches in repair the same as it would have been by an acceptance by the selectmen or railroad commissioners as the charter provided.

If there had been no finding of non-acceptance by either board, then there would be room for presumption of accept-

ance, and after such lapse of time, perhaps the presumption ought to be conclusive. But there can be no presumption of a fact one way when the fact is established the other way.

Possibly the town might have waived acceptance by the selectmen and accepted the crossing in some other way, but there is no such finding. All that can be claimed on this point from the special verdict is that it tends to show a waiver; but this court cannot make that inference, or find any fact.

The slight repairing of the travelled track of the fill, shown by the exceptions, certainly does not necessarily imply a waiver of the duty to put up a railing such as was needed in order to restore the road to its former state and *usefulness*, or an acceptance of the crossing as a whole without a railing, especially when it appears that neither tribunal designated in the charter ever did accept it.

If the jury had found specially that the railroad company relied upon the action of the town as an acceptance; or had omitted to find that the selectmen and commissioners did not accept; or had found that the town waived acceptance by the selectmen, the defendant's motion would have stood on stronger footing.

Upon the verdict as it was, both general and special, we think there was no error in overruling the motion for judgment for the defendant.

Judgment affirmed.