H. B. JENNINGS ET AL., RESPONDENTS, v. MISSOURI PACIFIC RAILROAD COMPANY, APPELLANT.*

Kansas City Court of Appeals. February 1, 1926.

*Corpus Juris-Cyc. References: Railroads, 33Cyc., p. 320, n. 72.

*L. M. Crouch* and *T. N. Haynes* for respondent.

*James F. Green, C. W. Hight* and *W. M. Bowker* for appellant.

BLAND, J.—This is a suit for damages based upon section 9948, Revised Statutes 1919, alleged to have resulted by reason of the failure of defendant to maintain an approach to a farm crossing situated at a certain point where defendant's railroad intersects plaintiffs' farm lands in Cass county. The petition alleges that defendant constructed a bridge over a ditch dug by it, which bridge constituted a portion of the approach to the farm crossing and that the defendant failed to keep this bridge in repair; that plaintiffs gave defendant the statutory notice to repair the bridge which it failed to do and thereafter plaintiffs replaced it with a concrete culvert. The first count of the petition is to recover the amount alleged to have been expended in making the repairs; the second count is based upon the injury to a colt alleged to have fallen through the old bridge; the third count is based upon the alleged failure of plaintiffs to have the proper use of their lands on account of their inaccessibility, brought about by the defective bridge. There was a verdict for plaintiffs on the first count in the sum of $279.76, and on the second count in the sum of $30 and on the third count in the sum of $300, and defendant has appealed.

The facts show that defendant's railroad runs through plaintiff's farm in a northwesterly and southeasterly direction; that immediately southwest of defendant's tracks and upon the same grade and parallel thereto is located the track of the Rock Island Railroad Company. It is sixteen feet from center of the two tracks. Defendant's road was the first one constructed. Prior to 1902 or 1903 it was located 300 or 400 feet southwest of its present location. About that time the Rock Island Company built its road through this part of the country and in order to avoid crossing defendant's tracks entered into some kind

of a contract, the nature of which is not disclosed, resulting in defendant's roadbed being moved to its present location. The two roads divide plaintiffs' farm, there being about fifty-one acres on the northeast and 200 acres on the southwest side of the railroads. Plaintiffs' house is on the 200-acre tract.

In the construction of the new roadbed, it was necessary to make a fill across a draw, located about 300 or 400 feet east of the farm crossing in controversy, but no opening was left for water, which accumulates on the north side of the railroad, to escape to the south, its natural course. Therefore, it became necessary to construct a ditch on the north side of the railroad right of way to connect the draw with a creek located at a point about 400 feet northwest of the farm crossing. A wooden bridge was placed across the ditch at the farm crossing about six months after the defendant began to operate its trains upon the new location, but there is no evidence as to who dug the ditch or built the bridge. There were gates made in the fences on each side of the two railroads and ballast placed between the tracks so as to make a crossing for wagons and vehicles. The farm crossing proper was in existence at the time of the trial.

When the ditch was first constructed it was about seven feet deep and fifteen feet wide at the top at the point of the bridge; later the defendant made the ditch deeper in order to more effectually drain the water from the draw. In 1918, or 1919, and several times prior thereto, when the bridge needed repairing, defendant's section foremen, upon being notified by plaintiffs of its defective condition, repaired it. In April, 1921, when the flooring of the bridge fell, the ditch at that point was about fifteen feet deep and about thirty-nine feet wide at the top. Plaintiffs' evidence tended to show that defendant's fence on the north side of its tracks was located about six feet southwest of the ditch. The evidence further shows that if the ditch were filled up and no other provision made to take care of the water, it would flow over the tracks of both railroads and something would have to be done to remedy the situation.

The Rock Island Railroad Company, at the time of the change made in the location of defendant's roadbed, purchased from plaintiffs' father, who then owned the land now owned by plaintiffs, a strip of land about 200 feet in width, at and about the point where this farm crossing was located. The ditch is located on this strip of land. There is some controversy as to whether the strip was conveyed to the defendant in 1905 when the Rock Island made a conveyance to the defendant of the land on which defendant's road is now located. The deed between the two railroad companies recites that the Rock Island Company was conveying—

". . . a strip seventy-five feet wide adjacent to and just west of the east line of the right of way of the Kansas City Rock Island, said east line of the right of way is seventy-five feet east of the land

parallel to and seven and one-half feet east of the center of said railroad for a distance of 9511 feet, said point being 918 feet in a southeasterly direction, measured at the Kansas City Rock Island from the north and south line of section 2, township 46, a line 31 west, Cass county, Missouri, which strip *being the easterly half of the right of way of the Rock Island as recorded in the office of the recorder of deeds in Cass and Jackson counties, Missouri.* (Italics ours.)

If the first description of the land is to govern, the ditch is not on the property of the defendant, whereas if the description in italics governs, it is. There was evidence on the part of the defendant that the ditch was as much as twenty-two and one-half feet from the fence in plaintiffs' field, which fence was located seventy-five feet east of a point seven and one-half feet east of the center of the railroad tracks of the Rock Island road.

Defendant insists that its demurrer to the evidence should have been sustained for the reason, among others, that the ditch at the point where the bridge was located was not upon the property of the defendant and, therefore, under the statute, it was under no duty to maintain the bridge. It is claimed that, applying the well-known rule of construction that a call for quantity in a deed must yield to the more definite description by metes and bounds, the ditch was not on land belonging to the defendant. Whether this rule of construction applies to the deed involved in this case, we need not say for the reason that it makes no difference whether the ditch was upon the property of defendant or not. It has been held that under the statute it is not only necessary for a railroad company under the circumstances present in this case to maintain the crossing proper but the necessary approaches thereto whether or not such approaches are upon the land of the railroad company. [Birlew v. Railroad, 104 Mo. App. 561, 565; Roxbury v. Railroad Co., 60 Vt. 121.]

It would seem that under the facts the only question to be submitted to the jury, outside of the damages sustained by plaintiffs, was whether or not the bridge was reasonably necessary to be maintained as an approach to the crossing. Defendant complains of plaintiffs' instruction A, which told the jury, among other things, that if the defendant—

". . . owned or operated the line of railroad located on the north or northeasterly part or portion of the lands mentioned in the deeds offered in evidence *at and near* the point of the bridge mentioned in evidence, then it was the duty of the said defendant to maintain the said bridge and keep it in a reasonably safe condition for the use of plaintiffs in the operation of their lands." (Italics ours.)

We think that defendant's criticism of this instruction is well taken. While there was evidence on plaintiffs' part that it was very difficult to get a wagon into the fifty-one acres on the north side of the railroad, this was on account of having to slide the wagon around a post

at the gate, the fence being so near the ditch; rendering it difficult to make the turn in order to go down the side of the ditch; that it was impossible to get a load of any kind or farm machinery into the field for this reason. This was based upon the testimony of the witness who gave it as his opinion that the ditch was only six feet from the fence whereas, as before stated, there is testimony on behalf of defendant that the ditch was as much as twenty-two and one-half feet from the fence. It seems apparent that it was a question for the jury as to whether or not the maintenance of the bridge was a necessary part of the farm crossing, that is to say, was necessary in order for plaintiffs to get into their field with livestock and such vehicles as were required in the cultivation of the land. It was, therefore, not a question as to whether the railroad was "at or near the point of the bridge." The jury even under defendant's testimony, could have found that the railroad was "at and near the point of the bridge" and under this instruction have found for plaintiffs. It was not, as before stated, a question as to whether the road was at and near the point of the bridge, the question was to whether the bridge was a reasonably necessary adjunct to the farm crossing.

The fact that defendant repaired the bridge, although strong evidence on the subject, does not conclusively, and as a matter of law, show that the bridge was a necessary part of the farm crossing, and it does not appear that plaintiff tried the case on any such theory. Defendant may have erroneously assumed that the maintenance of the bridge was necessary but afterwards discovered that it was not when it refused to repair it the last time. This was a matter for the jury. We think that the instruction was clearly misleading and therefore erroneous.

The petition alleged that the bridge and ditch were constructed by the defendant. The testimony does not sustain this allegation of the petition. Defendant insists that its demurrer to the evidence should have been sustained for this reason. As this contention is of sufficient gravity to warrant plaintiffs' amending their petition, it is unnecessary for us to say whether this defect is fatal. The statute creates liability for failure to maintain a crossing as well as failure to construct one. Some other points are made but as they may not arise at the next trial, it is unnecessary for us to pass upon them.

The judgment is reversed and the cause remanded. *Arnold, J.*, concurs; *Trimble, P. J.*, absent.