**Anthony NOTO and Barbara Failer b/n/f Stephen Failer, Plaintiffs,**

v.

**PICO PEAK CORPORATION, Defendant and Third-Party Plaintiff-Appellee,**

v.

**CARLEVARO & SAVIO, Third-Party Defendant-Appellant.**

No. 51, Docket 72–1396.

United States Court of Appeals, Second Circuit.

Argued Oct. 16, 1972.

Decided Nov. 20, 1972.

John P. Meaker, Waterbury, Vt., for third-party defendant-appellant.

James L. Morse, Burlington, Vt., for third-party plaintiff-appellee.

Before MANSFIELD, OAKES and TIMBERS, Circuit Judges.

OAKES, Circuit Judge:

This appeal is from a judgment obtained in a diversity case by a third party plaintiff ski lift operator against a third party defendant ski lift manufacturer. The operator, Pico Peak Corpo-

ration (hereinafter "Pico"), was originally sued by two persons injured when a cable on its double chair lift derailed on March 23, 1969. The cable derailment occurred as the result of a wobble on the bullwheel which supports the cable at the top of the lift, the wobble in turn resulting from bearing failure in the bullwheel. Pico impleaded the lift manufacturer, Carlevaro & Savio (hereinafter "Carlevaro"). At trial, after the individual plaintiffs had rested, Pico settled with them for a total of $14,500. The case then went to the jury solely on Pico's third party claim against Carlevaro and the jury returned a verdict in favor of Pico for the full amount of Pico's settlement with the injured individuals.

Carlevaro asserts here that it should not have been held liable at all since any duty it had to Pico was fulfilled by appropriate instructions and warnings in respect to the maintenance of the bullwheel. Carlevaro also asserts that Pico was "actively" negligent in failing to stop the lift when the bullwheel began its erratic behavior with the result that there can be no indemnity. *See* Viens v. Anthony Co., 282 F.Supp. 983 (D.Vt. 1968). Carlevaro claims alternatively that it is entitled to a retrial because the fact of Pico's insurance came out in the individual plaintiffs' main case and because the court instructed the jury on the dollar amount of the settlement paid by Pico to them. We find each claim to be without merit.

■ Whether Carlevaro fulfilled its manufacturer's duty of designing properly, *cf.* Wasik v. Borg, 423 F.2d 44, 46–49 (2d Cir. 1970),[1] and of warning against foreseeable dangers, Jamieson v. Woodward & Lothrop, 101 U.S.App.D.C. 32, 247 F.2d 23, 25–26, cert. denied, 355 U.S. 855, 78 S.Ct. 84, 2 L.Ed.2d 63 (1957), was a question properly left to

the jury deliberating with the guidance of appropriate instructions. Stief v. J. A. Sexauer Manufacturing Co., 380 F.2d 453, 459 (2d Cir.), cert. denied, 389 U.S. 897, 88 S.Ct. 220, 19 L.Ed.2d 216 (1967); 2 F. Harper & F. James, The Law of Torts 1546 (1956). Here the jury could have found, and as we must take it did find, that the bullwheel bearing assembly was defectively designed, with a defective seal permitting loss of lubricant and with an inadequate bearing life expectancy. Carlevaro claims, however, that it put Pico on notice of the defects so as to absolve itself of liability under Rekab, Inc. v. Frank Hrubetz & Co., 261 Md. 141, 274 A.2d 107 (1971). This notice Carlevaro claims was given in its letter of November 7, 1968, dated two and one-half years after the sales contract for the installation of the lift was signed and a year and one-half before the accident, and in a pamphlet of instructions mailed concurrently under separate cover. All that the letter of November 7, 1968, appears to be, however, is a notice of mailing of the pamphlet. The pamphlet, containing maintenance instructions for the drive machinery and return bullwheel, merely says that the hubs of the wheels should be filled with grease, absent which ice formations from condensation can ruin the bearing and eventually a "misalignment of the bullwheel (and a possible accident caused by cable derailment) can happen." This is a far cry, however, from a specific warning of defective design. The general instructions and maintenance specifications were even less specific. At least where the jury, as here, could find that the lift operator took reasonable steps to follow the maintenance procedures set forth, the instructions given by the manufacturer can hardly be held to absolve it of responsibility.[2]

1. Appellant's liability to Pico might also have been based on a contract-breach of implied warranty rather than a tort theory. *See* Vt.Stat.Ann. Tit. 9A, § 2–315. *Cf.* Basko v. Sterling Drug, Inc., 416 F.2d 417, 424–425 (2d Cir. 1969).

2. " . . . [T]here could scarcely be a situation where the maker of a defective chattel might satisfy his duty of care by warning or instructions." 2 F. Harper & F. James, *supra* at 1559.

The *Rekab* case, relied upon by appellant, clearly has no bearing here, for there the manufacturer wrote the amusement park owner that he was shipping and did indeed deliver and offer to install at his own expense a new spindle shaft and bearing for a "hydraulic paratrooper ride." That letter, delivery and offer of free installation were found to constitute an implied warning that the amusement park owner *replace* the old spindle with a new one. Here, however, Pico was merely warned to step up servicing of the bullwheel bearing. No aspects of the communication between manufacturer and customer even impliedly emphasized the existence, much less the gravity and immediacy, of the possible defect as in *Rekab*. Thus, Carlevaro could reasonably have been found not to have met its duty to warn. *Cf.* Spruill v. Boyle-Midway, Inc., 308 F.2d 79, 86 (4th Cir. 1962). *See generally* W. Prosser, Law of Torts 665 (3rd ed. 1964); Noel, Manufacturer's Negligence of Design or Directions for Use of a Product, 71 Yale L.J. 816, 830, 844–47 (1962); Dillard & Hart, Product Liability: Directions for Use and the Duty to Warn, 41 Va.L.Rev. 145 (1955).

■ Appellant also argues that there was time for a reasonably prudent lift operator to shut the lift down after the grinding bullwheel became noisy. Hence it argues Pico was actively negligent, having knowledge its action could prevent an impending accident, so as to bar indemnity.[3] Viens v. Anthony Co., *supra*; Town of Roxbury v. Central Vermont Railroad, 60 Vt. 121, 139, 14 A. 92, 101 (1887). Under a charge that was not objected to on this score, the jury here found that Pico had not been actively negligent by virtue either of the failure of the Pico employee to shut down the lift or the failure of Pico to grease the bullwheel assembly properly. We cannot undo the jury verdict on appeal.

■■ Pico's counsel in cross-examination of one of the individual plaintiffs inadvertently drew out a mention of Pico's insurance company and this was expanded on a little by the individual plaintiffs' attorney. The trial court refused to grant a mistrial as to Pico or Carlevaro, using its discretion under Joslin v. Griffith, 125 Vt. 104, 106–107, 211 A.2d 249, 251 (1965), and Pico thereafter settled. Carlevaro did not renew its mistrial motion. Surely, however, the disclosure of the operator's insurance did not prejudice the manufacturer. A jury in the year 1971 probably expected both the operator and manufacturer to have liability insurance. However, since there was no suggestion that appellant, from whom Pico (the insured) sought indemnity, was insured, any possible prejudice in this situation would only have arisen against Pico rather than Carlevaro. Furthermore, the most that could be said as a result of the disclosure is that perhaps the operator (and its insurer) paid more in settlement to the original plaintiffs than they otherwise might had the fact of insurance not been disclosed. The indemnity action did not pass this speculative increase in the settlement figure on to Carlevaro for under the very sensible instructions of Vermont's late Chief District Judge it was left to the jury to determine whether it should indemnify Pico for the $14,500 actually paid in settlement or a lesser sum, and this in turn depended on whether the jury found that Pico "acted in good faith and made a reasonable settlement . . . ." The jury thus made an independent determination on the amount of indemnification and its finding here again binds appellant.

■ The fact that the amount of the settlement actually made was mentioned by the judge in his charge cannot have been prejudicial. Without knowing what that settlement was the jury would

---

3. Generally speaking in Vermont there is no contribution or indemnity between

joint tortfeasors. Spaulding v. Oakes, 42 Vt. 343, 347 (1869).

**362**

have been left entirely to speculation. The jury was free to award less than the amount paid, and this is all that Carlevaro can ask for.

Judgment affirmed.