## NORFOLK COUNTY.

### Amos S. White & others *vs.* Inhabitants of Quincy.

The obligation of a railroad company, under the Rev. Sts. c. 39, § 72, to maintain and keep in repair any bridge with its abutments constructed by such company over or under a turnpike road, canal, highway, or other way, applies to the whole structure which it has built under the authority of its charter for the purpose of the crossing, although a portion of such structure lies outside of the boundaries of the location of the railroad.

Tort for injury to the plaintiffs' carriage sustained by reason of a defect in a highway in Quincy.

At the trial in the superior court, before *Devens*, J., the facts which are material appeared substantially as follows : The railroad of the Old Colony Railroad Company was located, sixty-six feet wide, diagonally across the highway in question, so that the eastern line of the location of the railroad formed with the eastern line of the highway an acute angle, within which the accident occurred on October 28, 1864. The company was incorporated by the St. of 1844, *c.* 150 ; and its road was constructed in 1844–1845, at this place, so as to run under the highway, which before then was on a level with the adjoining land. To effect this, the company built in the centre of the location of its railroad, where it crossed the highway, abutments about thirty feet apart, between which ran the railroad tracks, and

which supported a wooden bridge. Across this bridge the company conducted the highway; and, in raising the highway so as to cross the bridge, the company built a bank wall along that part of the eastern line of the ˌhighway which forms the angle before mentioned with the eastern line of the location of the railroad, and filled in with earth the whole of the space between this bank wall and the eastern abutment of the bridge. On this bank wall, lying thus wholly outside of the location of the railroad, no railing or other barrier to protect public travel was ever placed; and the injury for which this action was brought resulted from the falling of the plaintiffs' carriage over the wall, at a point ten feet east of the eastern line of the location of the railroad, and twenty-five feet east of the eastern line of the bridge, while being driven along the highway on a dark night. So far as appeared in the case, the highway was raised, and the railroad bridge and the bank wall were built, by the railroad company, without the consent of, or any consultation with, either the county commissioners of Norfolk or the selectmen of Quincy.

The defendants requested the judge to rule that if any railing or barrier was needed to protect public travel at the place where the accident occurred, it was the duty of the railroad company, not of the town, to erect it, and that the town was not liable for an injury sustained by want thereof; but the judge declined so to rule.

A verdict was returned for the plaintiffs; and the defendants alleged exceptions.

*J. Q. Adams,* for the defendants.

*W. Colburn,* for the plaintiffs.

HOAR, J. The verdict against the defendants was clearly right, so far as appears from the bill of exceptions, unless the obligation to erect and maintain a railing at the place of the accident was imposed on the railroad company. But there is no liability resting upon a town to keep a way in repair, where other sufficient provision is made by law for the maintenance of the way. Rev. Sts. *c.* 25, §§ 1, 22. Gen. Sts. *c.* 44, §§ 1, 22. *Sawyer* v. *Northfield,* 7 Cush. 491. *Davis* v. *Leominster,* 1 Allen, 182. *Titcomb* v. *Fitchburg Railroad Co.* 12 Allen, 254.

And, upon the facts reported in the bill of exceptions, we **are of** opinion that the part of the way where the accident happened, and which was defective for want of a railing, was a place which the Old Colony Railroad Company were required by law to keep safe and convenient for travellers, and that the action against the defendants cannot be maintained.

By the statute in force when the railroad company was chartered, it was provided that " every railroad corporation shall maintain and keep in repair all bridges with their abutments, which such corporation shall construct over or under any turnpike road, canal, highway, or other way." Rev. Sts. *c.* 39, § 72. It is stated that it did not appear at the trial that the construction of the railroad bridge, and the consequent raising of the highway, was done with the consent of, or on consultation with, the selectmen of Quincy, or the county commissioners of Norfolk county; but this was immaterial, as the presumption is that the parties acted rightfully; a presumption which such a lapse of time makes very strong, if not absolutely conclusive. And it seems to us that the evidence shows that the bank wall at the edge of the highway was, within the meaning of the statute, a part of the bridge and its abutments which the railroad company had constructed to enable their road to pass under the highway.

The abutment of a bridge cannot, for the purposes of the statute, be confined to the mere wall on which the flooring of the bridge rests. The whole structure, raised and built by the railroad under the authority of their charter, for the purpose of the crossing, must be included. In the language of Chief Justice Shaw, in *Parker* v. *Boston & Maine Railroad,* 3 Cush. 107, " the raising of a common road, with an embankment of sufficient length on each side to form an easy slope to a high bridge, is a part of the franchise given by the charter, as much as the right to take property, or to pass over navigable waters. These bridges, and the embankments extending laterally from them, are as much a part of the structure authorized by the charter, as the railroad itself." The same view was expressed in *Titcomb* v. *Fitchburg Railroad Co.* 12 Allen, 254; and in *Commonwealth* v. *Deerfield,* 6 Allen, 449, the decision was based upon a

similar principle.  In building the bridge, the railroad company have undertaken to make a safe passage for the road, which existed previously, across their railroad.  They dispossess the ordinary officers, charged with the maintenance of public ways, from so much of the way as is necessary to effect this purpose.  The statute requires them to keep in repair just what it requires them to construct.

The fact that this bridge was constructed at a fork of the road, and that it was requisite to accommodate three lines of travel, caused some peculiarities in the manner in which the work was done, but does not affect the principle applicable to the case.  The travelled way across the base of the triangle ran along the place to be occupied by the slope of the embankment necessary to support the bridge and afford a passage over it.  It was, therefore, requisite to bring it up to a level; and, to keep it so, to support it by a bank wall.  This wall was as much a part of the abutment as the fly walls with which abutments are commonly built.  It kept the earth of the embankment in its place, and strengthened the whole structure thereby.  We think, therefore, that the danger to which the plaintiffs were exposed was a danger caused by the act of the railroad company, in the erection of their bridge and its abutments, against which the company, and not the town of Quincy, were required by law to furnish an adequate safeguard.

We have not put our decision upon the language of the St. of 1846, *c.* 271, or of the Gen. Sts. *c.* 63, § 61, which expressly require railroad companies to maintain and keep in repair the bridges, " with their approaches and abutments; " although we see no reason to doubt that the railroad company is subject to these provisions, which are a regulation of a matter of public duty, applicable to all railroad companies whose charters are subject to the control of the legislature.  *Lyman* v. *Boston & Worcester Railroad Co.* 4 Cush. 288.  We think the language of the General Statutes was merely a more full expression of the true construction of the provision in the Revised Statutes.  The case of *Stearns* v. *Old Colony & Fall River Railroad Co.* 1 Allen, 493, has no direct bearing upon the question, because it related

to the obligation to fence between the railroad company and private persons who had assumed the liability for a consideration taken into account in the assessment of damages; and because the statute there construed was expressly applicable only to railroads constructed after its passage.      *Exceptions sustained.*