THE INHABITANTS OF THE TOWNSHIP OF MONTCLAIR

*v.*

THE NEW YORK AND GREENWOOD LAKE RAILWAY COM-
PANY.

1. The provision of the sixth section of the act concerning corporations, approved February 14th, 1846 (*Nix. Dig. p. 151*), which was incorporated in the Revision of 1875 (*Rev. p. 178 ? 6*), declaring that the charter of every corporation which should thereafter be granted by the legislature, should be subject to alteration, suspension and repeal, reserves to the legislature the authority, in its discretion, for proper ends, to make any alteration or amendment of a charter granted subject to it, which will not defeat or substantially impair the object of the grant, or any rights vested under it.

2. Such alteration or amendment may be made by supplement to the act entitled "An act to authorize the formation of railroad corporations and regulate the same." *Rev. p. 925.*

3. By a charter granted in 1867, the Montclair Railway Company was incorporated and empowered to build a railway, but at the same time was required to construct and maintain bridges where highways should cross its railway. In 1875, upon foreclosure of a mortgage, the property and franchises of that company were sold and transferred to the Montclair and Greenwood Lake Railway Company, then organized in pursuance of *Rev. p. 916 ? 56*, and in 1878, upon another mortgage foreclosure, the same property and franchises were sold and transferred to the New York and Greenwood Lake Railway Company, also organized under *Rev. p. 916 ? 56*. One of these companies graded a right of way across an avenue in Montclair township, Essex county, making a cut twenty-two feet deep and sixty-nine feet wide through the avenue, but did not lay rails upon it. The last named of these companies now owns and controls that right of way. By a supplement to the act to authorize the formation of railroad corporations and regulate the same (*Rev. p. 925*), which was approved in 1887 (*P. L. of 1887 p. 226*), after the said right of way was graded and said cut made, it was made the duty of any company that owned or controlled a right of way for a railroad, which had been graded in whole or in part, but upon which tracks had not been completely laid, to construct a bridge over such right of way where a public highway should cross it, and provision was made that the duty thus imposed may be specially enforced by bill in the court of chancery. or, at the option of the corporation charged with the care of the highway, such latter corporation may build the bridge and recover the cost thereof from the railroad company by suit.—*Held*, that the supplement referred to imposed a duty upon the New York and Greenwood

Lake Railway Company which was reasonable, and which did not defeat or impair the object of the grant to the Montclair Railway Company, to which the New York and Greenwood Lake Railway Company succeeded, or any vested rights under it; and, also, that the court of chancery, by virtue of the provisions of that supplement, had jurisdiction to compel the specific performance of the duty imposed.

4. It is not necessary, in legislation amending statutes, to set forth the amended statute and also the statute as it was before the amendment. It is sufficient to set forth the amended act in full.

On demurrer.

*Mr. C. Parker*, for the demurrant.

*Mr. Wm. S. Gummere, contra.*

By the complainant's bill it appears that, in 1867, the Montclair Railway Company was incorporated by an act of the legislature of this State (*P. L. of 1867 p. 301*), which empowered it to construct a railway from the village of Montclair, in the township of Bloomfield, in Essex county, to the Hudson river, at or between indicated points, and to construct a branch railroad in Bloomfield township, and extend it into Caldwell and Wayne townships. By the ninth section of its charter the company was required " to construct and keep in repair good and sufficient bridges over or under the said railway where any public or other road shall cross the same, so that the passage of carriages, horses and cattle across the said railway shall not be impeded thereby." Further authority was given to it to issue bonds and to secure their payment by mortgage upon its real estate and personal property, its railways and their appurtenances, and its franchises, powers, privileges and rights, under said act. On the 15th of April, 1868, the legislature (*P. L. of 1868 p. 998*) set off from Bloomfield township that part of it which is now known as the township of Montclair, and created the complainant by the corporate name of " The Inhabitants of the Township of Montclair, in the County of Essex."

On January 1st, 1870, the Montclair Railway Company located an extension of its railway into Caldwell township

through a portion of Montclair township, across a public high-way called Mountain Avenue North, and afterwards graded its right of way so located across that avenue by making a cut twenty-two feet deep and sixty-nine feet wide, and thereby wholly stopped public travel through the avenue. It then con-structed a bridge across the cut.

In September, 1870, it mortgaged its property and franchises to trustees to secure the payment of its bonds for $2,000,000.

In November, 1873, before the extension of the railway was completed, the trustees under the mortgage commenced proceed-ings in foreclosure in this court, and on September 27th, 1875, by virtue of an execution upon a decree of this court, the prop-erty mortgaged was sold. The trustees under the mortgage purchased at the sale, and thereafter, under the authority of the fifty-sixth section of the act respecting railroads and canals (*Rev. p. 916*), associated with them other persons, to the number re-quired by the statute, and formed a corporation named "The Montclair and Greenwood Lake Railway Company."

The statute just referred to provides that, whenever the rail-way of any corporation created under any law or laws of this State shall be sold and conveyed under and by virtue of the decree of this court to satisfy encumbrances, such sale "shall vest in the purchaser or purchasers thereof all the right, title, interest, property, possession, claim and demand, in law and equity, of the parties to the suit * * * of, in and to the said railroad * * * with its appurtenances; and also of, in and to the corporate rights, liberties, privileges and franchises of the said corporation, but subject to all the conditions, limitations, restric-tions and penalties of the said corporation of and concerning the same," and that the purchasers shall become a new body politic and corporate, "and shall be entitled to all the rights, liberties, privileges and franchises, and be subject to all conditions, limita-tions, restrictions and penalties of and concerning the said rail-road * * * so sold and conveyed, which were contained in the act or acts creating, or under which the aforesaid corporation was created, and the supplements thereto, so far as the same was

Montclair v. New York and Greenwood Lake Railway Co.

or were in force and unrepealed at the time of such sale and conveyance."

In December, 1875, this new corporation mortgaged its property, as the original corporation had done, and afterwards the mortgage it gave was foreclosed in this court, and in May, 1878, another sale of the property and franchises was had, and the property &c. was again bought in, and, under the statute last referred to, a new corporation was formed called "The New York and Greenwood Lake Railway Company." This company is the defendant in this suit.

Since the bridge over the cut across Mountain Avenue North was built, it has been suffered to decay and fall down and has never been rebuilt, and although the right of way across Mountain Avenue North has been graded, the rails have never been laid upon it.

By a supplement to the act to authorize the formation of railroad corporations and regulate the same, approved April 28th, 1887 (*P. L. of 1887 p. 226*), the fourteenth section of the act just mentioned was amended so as to provide that it shall be—

"The duty of any company incorporated ˍunder this act, *or any company owning, leasing or controlling any right of way for a railroad within this state, which has been graded in whole or in part, but upon which right of way the track or tracks have not been completely laid,* to construct and keep in repair good and sufficient bridges and passages over, under and across said railroad or *right of way* where any public or other road, *street or avenue,* now or hereafter laid, shall cross the same, so that public travel on the said road shall not be impeded thereby;" and also " *that in the event that such company shall not, within a reasonable time after notification from the common council of the city or committee of the township in which such bridges and passages are to be so constructed or repaired, proceed to construct or repair the same as required by this act, the said common council or committee may, in the name of such city and township, institute proceedings in the court of chancery against such company to compel the specific performance of the duties imposed upon such company by this section of this act, and in case a decree shall be made against such company in said proceedings, commanding it to specifically perform said duties within a reasonable time, to be therein fixed, and such company shall neglect or refuse to specifically perform said duties within said period of time, the chancellor, upon proof of such neglect or refusal, may, in his discretion, issue the state's writ of injunction to restrain said company from the exercise of any franchise or the transaction of any business in this state until said company shall have obeyed the command of said decree, and shall have paid the costs of said proceedings, including*

Montclair v. New York and Greenwood Lake Railway Co.

*a reasonable allowance to the counsel of such city or township, to be fixed by the chancellor ; and further provided, that said council or committee, in the event of the failure of such company to construct or repair such bridges or passages within a reasonable time·after notification as aforesaid, may, if they shall deem it advisable so to do, proceed themselves to construct or repair such bridges or passages, and when the cost thereof shall have been ascertained, the same may be collected of and from said company by said common council or township committee by an action at law in any court of competent jurisdiction.*"

[All of the quotation from the amended statute, which is in italics, is new matter incorporated by the amendment·referred to].

It further appears by the bill that, after the supplement just referred to went into effect, the complainant notified the defendant to proceed to construct a good and sufficient bridge over its railway at the Mountain Avenue North crossing, in pursuance of the terms of the statute last referred to, and that the defendant has refused to do so.

The bill prays that the defendant may be decreed to specifically perform the duty of constructing and keeping in repair such bridge.

The defendant demurs to the bill, specifying, under the requirement of Rule 225, two grounds of demurrer : *first*, that this court has no jurisdiction to decree the building of the bridge ; *second*, that, even if the Montclair Railway Company was bound to build and maintain the bridge, the defendant is not.

THE CHANCELLOR.

The supreme court of this State has lately decided the question raised by the second ground of demurrer so far as the duty imposed by the charter of the Montclair Railway Company is concerned, in a case between the State and this defendant (*New York and Greenwood Lake R. R. Co.* v. *State, 21 Vr. 303*), by holding that the devolution of the property and franchises of the Montclair Railway Company upon the defendant, according to the provisions of the fifty-sixth section of the Railroad and Canal act (*Rev. p. 916*), imposes also upon it the duties which under its charter that company owed to the public, among which was the obligation to build the bridge in question.

I will consider the question whether a like duty is imposed by

the supplement to the act to authorize the formation of railroad corporations and regulate the same, above spoken of, and at the same time the question whether, if such duty was thus imposed, that supplement empowered this court to enforce its performance. It has not been contended that, unaided by the statute, this court has jurisdiction to enforce such a duty, and I will therefore not consider that question. The only insistment is, that the bill is sustainable, both as to the duty and as to the court's jurisdiction, under the supplement to the act to authorize the formation of railroad corporations and regulate the same (*Rev. p. 925*), which was approved April 27th, 1887 (*P. L. of 1887 p. 226*). The act to which that supplement applies by its fourteenth section imposed the same duty, with respect to bridges and highways, upon railroad companies formed under it, that the Montclair Railway Company's charter required of that company. The supplement extended the duty to " *any* company owning, leasing or controlling any right of way for a railroad within this state, which has been graded in whole or in part, but upon which right of way the track or tracks have not been completely laid," and expressly empowered this court to enforce the performance of the duty imposed by such last-mentioned section.

The first question to be considered is, whether this supplemental enactment applies to the defendant. By its language it includes *any* company incorporated under the law to which it is a supplement " or " [undoubtedly meaning " and "] " *any* company owning" &c. That is, not only corporations formed under the law mentioned, but other railroad companies that own, lease or control rights of way that are in the specified condition. The language is broad enough to include the defendant, and the bill's description of the defendant's right of way across Mountain Avenue North shows the condition of affairs contemplated by the amendment to the statute.

It is suggested that the extension of such a regulation, in the act amended, to all railroads has no proper relation to the object of the act as expressed in its title; that the object of the act is to provide for the formation of railroad companies under a general law and to regulate such companies. That this was not the

legislative intent, I think, is apparent upon bare perusal of the statute. Throughout the act the greatest care is taken, by express language prefacing certain of the sections, to confine the provisions of those sections to corporations formed under the act, but there are other sections, which concern proper regulations applicable to any railroad, that are not so prefaced and in terms refer to " any railroad," indicating that the legislative intent was to enact a general law which should regulate all railroad corporations and, at the same time, authorize the formation of new ones. Perhaps the most striking indication of this intention is found in the last section of the act (*Rev. p. 935 § 127*), where it is provided that the act may be altered, amended or repealed, " but such repeal or alteration shall not affect any corporations *heretofore organized*, unless the act making such repeal or alterations shall so expressly declare." It was evidently the legislative intent that the act should extend to all railroad corporations of the State. Its several sections, however, are so drawn as to distinguish, in their application, between corporations organized under that act and all railroad corporations, whether formed under that act or otherwise incorporated. This distinction was evidently the result of an extended consideration of corporate interests, for in the last section of the act, looking to the maintenance of the distinction, it is provided that, when an amendment is intended to extend to corporations organized before the act was passed, it shall expressly say so.

This act was approved on the 2d of April, 1873 (*Rev. p. 925 ; P. L. of 1873 p. 88*), and the defendant corporation was subsequently, in 1878, organized.

Under the language of the act the amendment may apply to the defendant. The defendant's organization does not relate back to the approval of the charter of the Montclair Railway Company. It is a new company with the powers and duties that that charter gave and requires. *Shields v. Ohio, 95 U. S. 319.*

But it is insisted, as the fifty-sixth section of the Railroad and Canal act (*Rev. p. 916*) virtually extended to the defendant the charter of the Montclair Railway Company, which was a contract with the State defining that which should be required of the

company in consideration for that which the statute gave it, and the defendant, by organizing under that section, accepted the contract so tendered, that now the imposition of a new duty, requiring the outlay of money, exacts more than the contract demands the performance of, and therefore takes the defendant's property without compensation, the argument being, that the charter requires the maintenance of bridges over the defendant's railway, while the act now amended extends that duty to the maintenance of bridges over graded or unused rights of way.

Without considering the question whether an additional duty is imposed, or whether the charter's provisions are susceptible of a construction that will include the duty imposed by the section now considered, I will assume that an additional duty has been imposed, and proceed to the discussion of the question suggested.

Charters of private corporations are regarded as executed contracts between the State and the corporator, and the rule is settled, that, if the charter does not contain a reservation of power in the legislature to modify or change the contract, the legislature cannot repeal, impair or alter such a charter against the consent or without the default of the corporation. Subsequent legislation modifying such a charter, where there is no such reservation, is unauthorized. But where such a provision is incorporated in the charter, it is clear that it modifies the grant, and that the subsequent exercise of that reserved power cannot be regarded as an act within the prohibition of the constitution. And this power, the charter being silent upon the subject, may be reserved by general law existing at the time the charter is granted, which provides that all charters thereafter granted shall be subject to it. The effect of such a law is the same as if each special charter thereafter contained its provisions, though the charter contains no such reservation of power nor any allusion to the general law.

These principles are well settled. *Miller* v. *New York, 109 U. S. 385; Tomlinson* v. *Jessup, 15 Wall. 454; Shields* v. *Ohio, 95 U. S. 319; Commissioners of Inland Fisheries* v. *Holyoke Water Power Co., 104 Mass. 446;* affirmed, *15 Wall. 500; Roxbury* v. *Boston and Providence R. R. Co., 6 Cush. 424; Massa-*

*chusetts General Hospital* v. *State Assurance Co., 4 Gray 227; White* v. *Inhabitants of Quincy, 97 Mass. 430; Parker* v. *Metropolitan R. R. Co., 109 Mass. 506; Story* v. *Jersey City and Bergen Plank Road Co., 1 C. E. Gr. 13, 21; State, Morris and Essex R. R. Co.* v. *Commissioners, 8 Vr. 228; State* v. *Person, Collector of Belvidere, 3 Vr. 134; State, South Orange R. R. Co.* v. *Douglass, 5 Vr. 82; People* v. *Boston and Albany R. R. Co., 70 N. Y. 569; Albany and Northern R. R. Co.* v. *Brownell, 24 N. Y. 345.*

By the sixth section of an act concerning corporations, approved February 14th, 1846 (*Nix. Dig. p. 151*), it was provided that "the charter of every corporation which shall hereafter be granted by or created under any of the acts of the· legislature, shall be subject to alteration, suspension and repeal, in the discretion of the legislature."

This has continued to be the law of this State hitherto, having, in 1875, been re-enacted as the sixth section of the revised Corporation act. *Rev. p. 178.* Although the charter of the Montclair Railway Company, which was approved in 1867, does not contain a legislative reservation of power to amend· and alter it, it is subject to the general law referred to, and must be regarded as though that law were incorporated in it.

There has been some diversity of opinion as to the extent to which this reserved power may be exercised. It is obvious that it would be difficult, by precise rule, to fix a limit by which all ·cases might be governed. It will suffice in this case to ascertain the principle which the authorities agree must restrain the exercise of the power, and see whether the legislation now being ·considered is within it. Upon this subject, in *Commissioners of Inland Fisheries* v. *Holyoke Water Power Co., 104 Mass. 446, 451,* Mr. Justice Gray said: "It is sufficient now to say that it is established by adjudications which we cannot disregard, and the principles of which we fully approve, that it at least reserves to the legislature the authority to make any alteration or amendment in a charter granted subject to it, that will not defeat ·or substantially impair the object of the grant, or any rights which have vested under it, and that the legislature may deem

necessary to secure either that object or other public or private rights." In the same case, upon appeal to the United States supreme court (15 Wall. 500, 519), Mr. Justice Clifford said: "Vested rights, it is conceded, cannot be destroyed or impaired under such a reserved power, but it is clear that the power may be exercised, and to almost any extent, to carry into effect the original purposes of the grant and to protect the rights of the public and of the corporators, or to promote the due administration of the affairs of the corporation."

In Parker v. Metropolitan R. R. Co., 109 Mass. 506, 508, Mr. Justice Morton said: "The reservation of power is broad and comprehensive. Whatever may be its limitation, it at least reserves to the legislature the right to make any reasonable amendments regulating the mode in which the franchise granted shall be used and enjoyed, which do not defeat or essentially impair the object of the grant, or take away any property or rights which have become vested under a legitimate exercise of the powers granted." And in Shields v. Ohio, 95 U. S. 319, Mr. Justice Swayne said: "The power of alteration and amendment is not without limitation. The alterations must be reasonable. They must be in good faith, and be consistent with the scope and object of the corporation. Sheer oppression and wrong cannot be inflicted under the guise of amendment or alteration. Beyond the sphere of the reserved powers, the vested rights of property of corporations, in such cases, are surrounded by the same sanctions and are as inviolable as in other cases."

In all these cases the new legislation imposed was sustained as a valid exercise of power. The Holyoke Water Power Company was required to build a fish-way in its dam across the Connecticut river at a cost of $30,000, to preserve the public right of fishing, upon the reasoning that the grant of a right to build the dam did not imply a grant of power to destroy the public right of fishing, but, on the contrary, should be taken to have been made upon the presumption that the public right would be preserved. In Parker v. Metropolitan R. R. Co., the tolls of a ferry company were reduced; in Shields v. Ohio, railroad passenger rates were cut down. In People v. Boston and Albany R.

*R. Co.*, a railroad was required to build a bridge over a turnpike within a year, the charter having been taken under a provision of the constitution and a general law which permitted the imposition of additional restrictions and burdens. Before the act of 1887, by the charter of the Montclair Railway, substantially the duty now resisted was imposed upon the defendant. The supreme court considers it to be identical. When the charter was enacted and accepted by the defendant's predecessor, it was agreed that the company was to erect and maintain bridges over highways. When Mountain Avenue North was cut into, this duty was so far recognized that a bridge was actually built. That cut was intended for a railroad, and is yet held by the defendants for that purpose, and I apprehend they will not deny their duty to again erect the bridge which they have neglected to maintain and have suffered to fall, when they determine to lay rails upon that right of way across the avenue. They justify their denial or present duty under the provision of their charter, merely by a literal construction of the charter's language. The bare statement of the facts in this case is convincing that the effect of the act of 1887 is most reasonable.

The case of the *City of Roxbury* v. *Boston and Providence R. R. Co., 6 Cush. 424*, is very much in point with the case in hand. There, it appears, that the Boston and Providence Railroad Company was incorporated in 1831, and required by its charter to raise or lower highways so that its railroad should pass over or under them. If such construction should not be satisfactory to the selectmen of the locality, the selectmen could call upon the county commissioners to direct what alterations should be made, and if such alterations were not made by the company, the selectmen might make them and recover therefor from the railroad company. This charter was granted after the passage of the statute of 1830 by which the legislature reserved power to amend, alter or repeal subsequent acts of incorporation. Chief-Justice Shaw, who read the opinion of the court, said (*p. 432*): "The defendants, then, having accepted their charter, after the above act, and whilst it was in force, took the charter subject to those provisions, and must

be bound by any reasonable amendment and alteration, which the legislature might thereafter make." In 1842 an act was passed which provided a method by which the mayor and aldermen of cities, when a railroad had been laid over a highway at grade, and it appeared necessary for the public security that the highway should be raised or lowered, could require the railroad company to change the highway. In 1849 another law was enacted which made provision somewhat similar to that contained in the act of 1842, and gave the supreme judicial court jurisdiction in equity, to compel railroad corporations to raise or lower highways where county commissioners duly decided that it should be done. The county commissioners duly decided that Washington street in Roxbury should be elevated over the tracks of the Boston and Providence Railroad corporation and that a bridge should be built over the railroad. The company did not carry out the work, and the city of Roxbury filed its bill in equity in the supreme court to compel the building of the bridge. To that bill the railroad corporation demurred, on the ground that the court had no jurisdiction, and that the bill did not state a case which entitled the plaintiffs to the relief prayed for. The demurrer was overruled. To the objection that the acts referred to gave the city a plain and adequate remedy at law by doing the work and suing the railroad corporation to recover its cost, the court replied that, if the city " must do this work at their own expense, with no other indemnity than that to be obtained by a contested suit with the defendant, this of itself would render that remedy anything but plain, adequate and complete."

Our act of 1887 gives to the township committee the option either of building the bridge and suing the railroad company for the cost, or of filing a bill in this court to compel specific performance of the duty which the law requires. Nothing in the act indicates that resort to the remedy by bill in this court is to depend upon the adequacy or inadequacy of the remedy by construction of the bridge and suit for the cost thereof. That remedy is to be pursued only if the committee think it " advisable" to pursue it, and, if the two remedies were not thus expressly made optional by the legislature, the reasoning of the court in the Rox-

bury case shows that the remedy by taxation to raise money to build the bridge, the erection of the bridge, and suit to recover its cost, is not a plain, adequate remedy, but most cumbersome and illy adapted to secure the performance of the corporate duty considered.

It remains only to consider the insistment at the argument, that the act of 1887 is unconstitutional because it is not within that part of article 4, section 7, paragraph 4 of the constitution, which provides that " no law shall be revived or amended by reference to its title only, but the act revived, or the section or sections amended, shall be inserted at length." The act of 1887 does not recite the unamended section of the original act, but it contains the entire section as amended. This form of amendment has several times been held to be constitutional by the supreme court of this State. *Van Riper* v. *Parsons, 11 Vr. 123, 127; Colwell* v. *Chamberlin, 14 Vr. 387, 388; State* v. *Powder Manufacturing Co., 21 Vr. 75, 81.*

I will overrule the demurrer.