NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY
& another *vs.* BOSTON, CAPE COD AND NEW YORK
CANAL COMPANY.

Suffolk.    March 30, 1917. — June 27, 1917.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Contract*, Construction.  *Cape Cod Canal.  Bridge.  Words, "*Bridge.*"*

In the provision of the contract of May 2, 1910, between the Boston, Cape Cod
and New York Canal Company, incorporated by St. 1899, c. 448, and the Old
Colony Railroad Company and its lessee, New York, New Haven, and Hart-
ford Railroad Company, as to the Buzzards Bay Railroad Bridge over the
canal, that "The Canal Company shall build the bridge across the canal and
properly equip it with signals, and shall thereafter sustain the obligation of
the maintenance, renewals and repairs of said bridge and signals," the word
"bridge," when the provision is construed with the whole contract and in the
light of the statute under which it was executed and of the physical facts, means
the entire bridge and not merely the drawbridge section over the canal channel;
and therefore it is the duty of the canal company to pay the expense of main-
tenance, including the inspection of wooden piles at the ends of the bridge and not
within the channel of the canal under the draw span.

CONTRACT to recover expenses for the inspection of certain
piling of the railroad bridge over the Cape Cod Canal, alleged
to have been incurred by the plaintiffs for the benefit of the de-
fendant under the provisions of the contract described in the
opinion.  Writ dated November 26, 1915.

In the Superior Court the action was heard by *Hardy*, J.,
without a jury.  The material facts are stated in the opinion.
The judge ruled that the word "bridge" as used in paragraph 6
of the agreement between the parties dated May 2, 1910, referred
to the entire structure spanning the distance between the two
banks, refused rulings of a contrary import asked for by the
defendant and found for the plaintiffs in the sum of $218.20.  The
defendant alleged exceptions.

*H. S. Davis*, for the defendant.

*S. C. Rand*, (*J. L. Hall* with him,) for the plaintiffs.

DE COURCY, J.  By its charter, St. 1899, c. 448, the defendant
corporation (herein called the Canal Company) was authorized

to construct and operate a ship canal across Cape Cod from Buzzards Bay to Barnstable Bay. The canal location, as established in accordance with the statute, for a distance of about six thousand feet followed the course and included practically the entire width of the Monument River, a tidal stream. Previous to this time the Provincetown line and Woods Hole line of the Old Colony Railroad Company separated at the Buzzards Bay station north of this stream, and they crossed the river on bridges approximately a mile apart. The construction of the canal as planned and carried out involved extensive changes in the location of the tracks, the abandonment of the two bridges and the building of a new bridge to carry these two lines of track across the river. (As the Old Colony Railroad Company was operated by the New York, New Haven and Hartford Railroad Company, lessee, we shall herein refer to each and both as the Railroad Company.)

The contract of May 2, 1910, between these parties contained the following provision: "VI. From the point near Buzzards Bay station where the new railroad construction is to begin the Canal Company shall construct the railroad as a two track railroad to the point east of the drawbridge where the branch to Woods Hole and the branch to Provincetown separate. The Canal Company shall build the bridge across the canal and properly equip it with signals, and shall thereafter sustain the obligation of the maintenance, renewals and repairs of said bridge and signals, but the method of sustaining said obligation shall be that the Railroad Company shall assume the task of such maintenance, renewals and repairs, and the Canal Company shall, subject, in case of dispute, to the approval of the Board of Railroad Commissioners, as to the amount, reimburse it for all expenses reasonably incurred in so doing, forthwith upon presentation from time to time of statements of such expenses. Said drawbridge shall be a double track lift bridge with a suitable opening for the passage of vessels, which opening shall have a clear width of at least 130 feet between the faces of the abutments, but it is further agreed that whenever the Railroad Company shall extend its double track from said junction point towards Woods Hole it shall repay to the Canal Company the estimated cost of such fixed span bridge construction as would be necessary under present conditions to carry a

second track across the Monument River beside the existing track now crossing the same."

The bridge which was constructed by the defendant was of pile construction at either end, and of steel construction with concrete piers for a distance of two hundred and five feet in the centre. The draw span was one hundred and sixty feet in length, and twenty-foot steel girders extended from the concrete piers to the piles. The railroad company expended certain sums for the maintenance of the piling, and brought this action for reimbursements under the above quoted contract. It is not disputed that the expenses incurred were reasonable and proper and that statements thereof were duly rendered to the canal company. The controlling question raised by the defendant's exceptions is whether that portion of the structure upon which the expenditures were made was included in "the bridge across the canal" which it is obliged to maintain.

An examination of the contract, in the light of the statute under which it was executed, and of the physical facts, disposes of the defendant's contention that the duty of maintaining a bridge across said canal extends only to the steel construction supported upon three concrete piers and covering a distance of two hundred and five feet; and that no duty is imposed upon it to maintain any of the piles which are not within the "channel of the canal" under the draw span. By the terms of its charter (St. 1899, c. 448, § 4) the location of the canal was to be "not exceeding one thousand feet in width;" and when the point of crossing was determined, the canal company, according to the findings of the trial judge, dredged Monument River from one bank to the other, and the excavations where the railroad crossed involved a deepening of the entire width of the river. The structure which the canal company was to build and maintain was (§ 11) "a bridge or bridges across said canal, or tunnel or tunnels under the same, suitable for the passing of railroad and highway traffic." That the Legislature intended to impose upon the canal company the burden of maintaining the entire bridge crossing the canal, and not merely the section containing the draw, seems apparent from the alternative obligation to build and maintain a tunnel, and the further duty placed upon it (§§ 14, 15) of providing and maintaining in the towns of Bourne and Sandwich "suitable ferries or bridges across the

canal, or a suitable tunnel or tunnels under the same," and of constructing highways over its location to connect therewith.

The contract into which the parties entered to expedite the work contemplated by the statute, expressly provided that the canal company should make the necessary application to determine "at what point or points said railroad shall cross said canal by drawbridge or drawbridges." Art. II. In Articles III and IV the "bridge" was referred to as a single and entire structure. It was expressly provided in Art. VI, above quoted, that the canal company should build and maintain "the bridge across the canal and properly equip it with signals;" and in the same article is a provision for "a second track across the Monument River beside the existing track now crossing the same." The supplementary contract of July 20, 1911, also refers to "the proposed drawbridge over Monument River." The plans show that some of the pile bents are within what the defendant refers to as "the canal channel." Its contention, that it is obliged to maintain only the three piers and the steel construction essential to the operation of the bascule draw, would exclude not only this piling but also the twenty-foot steel girders extending from piers A and C to the adjacent pile bents. As stated in the plaintiff's brief, the canal company's offer is "to maintain something which is not itself a bridge and which fails to cross the canal either as they drew it or as they built it." See *Commonwealth* v. *Deerfield*, 6 Allen, 449; *White* v. *Quincy*, 97 Mass. 430; *Boston, petitioner*, 221 Mass. 468; *Freeholders of Sussex* v. *Strader*, 3 Harr. 108; *Tolland* v. *Willington*, 26 Conn. 578.

We do not adopt the defendant's main contention that "the bridge" is to be taken as meaning only the drawbridge section over the "canal channel." Consequently it is unnecessary to discuss the several exceptions in detail.

*Exceptions overruled.*